IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS,
EASTERN DIVISION

| | | |
|---|---|---|
| ROSLYN GRIFFITH and JERRET CAIN | ) | |
| Plaintiffs, | ) | 1:10-cv-02697 |
| | ) | |
| v. | ) | Honorable John F. Grady |
| | ) | |
| CONSUMER PORTFOLIO SERVICES, INC., | ) ) | |
| Defendant. | ) | JURY DEMAND |

**PLAINTIFFS' OPPOSITION TO CPS' MOTION FOR SUMMARY JUDGMENT**

Plaintiffs respectfully submit the following response in opposition to defendant Consumer Portfolio Services, Inc's ("CPS") motion for summary judgment.

**I.  INTRODUCTION**

CPS filed a motion for summary judgment as to the claims brought by Rosyln Griffith and Jerret Cain ("Plaintiffs") under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA"). CPS's sole argument is that its calls to Plaintiffs were not made using an "automatic telephone dialing system" ("ATDS") as defined in the TCPA. However, since 2003, the Federal Communications Commission ("FCC") has repeatedly ruled that so-called "predictive dialers" used pervasively in collections by creditors such as CPS are indeed ATDS under the TCPA

CPS's argument ignores the undisputed facts that the dialer used by CPS has the capacity to autodial, CPS uses its dialer to predictive dial, which the FCC has deemed to be an ATDS, CPS' expert admits that the dialer as used by CPS is covered by the FCC definition of an ATDS, and plaintiffs' expert declaration that the dialer system used by CPS fits both the statutory definition of an ATDS set forth in the TCPA and the FCC definition of an ATDS.

CPS nevertheless seeks to avoid liability for its actions by arguing that its predictive dialing system is not *really* a predictive dialing system despite overwhelming evidence and the testimony

of CPS' own expert to the contrary. This Court should rule as a matter of law that CPS made the telephone calls at issue using an ATDS and therefore deny CPS's motion for summary judgment. In the alternative, the Court should deny CPS's motion because there would be a dispute of material fact of whether the dialer used by CPS to call plaintiffs' cellular telephone number is a ATDS.

## II.   THE TCPA AND FCC RULINGS

### A.   The TCPA Broadly Prohibits the Use of ATDS in Calls to Cellular Numbers.

Congress found that unwanted automated calls were a "nuisance and an invasion of privacy, regardless of the type of call" and that banning such calls was "the only effective means of protecting telephone consumers from this nuisance and privacy invasion." Pub. L. No. 102-243, §§ 2(10-13), (Dec. 20, 1991), *codified at* 47 U.S.C. § 227. To that end, the TCPA provides it will be unlawful to using any ATDS or an artificial or prerecorded voice... to any telephone number assigned to a cellular telephone service. 47 U.S.C. § 227(b)(1)(A)(iii).

The TCPA defines ATDS as "equipment which has the capacity - (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C § 227(a)(1). When interpreting statutory language, the court "must presume that a legislature says in a statute what it means and means in a statute what it says there." *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992) (citations omitted). *Satterfield v. Simon & Schuster, Inc.*, 569 F. 3d 946, 951 (9th Cir. Cal. 2009). Reviewing the TCPA, the 9th Circuit found the statutory text is clear and unambiguous. *Id.*

> When evaluating the issue of whether equipment is an ATDS, the statute's clear language mandates that the focus must be on whether the equipment has the capacity 'to store or produce telephone numbers to be called, using a random or sequential number generator.' Accordingly, a system need not actually store, produce, or call randomly or sequentially generated telephone numbers, it need only have the capacity to do it.

*Id*. The statute does not require that the defendant actually auto-dial a telephone number. Rather, the system only needs to have the capacity to do so in order to be liable pursuant to the Act. *Id*.

As the Northern District held earlier this year:

> . .Congress included a definition that provides that in order to qualify as an automatic telephone dialing system, the equipment need only have the capacity to store or produce numbers . . . Here, Plaintiff included allegations in his complaint sufficient to meet the requirements of an automatic telephone dialing system, and a contrary ruling would render portions of the TCPA meaningless.

*Lozano v. Twentieth Century Fox Film Corp*., 702 F. Supp. 2d 999, 1010-1011 (N.D. Ill. 2010).

Several Federal Courts, including the Court of Appeals for the Ninth Circuit, have held that the focus must be on the equipment's *capacity* to store, produce, or call randomly or sequentially generated telephone numbers not whether the equipment actually does these things. *Satterfield*, 569 F. 3d at 951; *Lozano*, 702 F. Supp. 2d at 1010-1011; *Vance v. Bureau of Collection Recovery LLC*, No. 10-06324, 2011 U.S. Dist. LEXIS 24908 at *6 -7 (N.D.Ill., March 11, 2011) (Judge Dow)(citations omitted); *Hicks v. Client Services,* Inc., 2009 WL 2365637 (S.D.Fla. June 9, 2009; *See also Joffe v. Acacia Mtge. Corp*., 121 P.3d 831, 839 ( Ariz. App. 2005). *Kazemi v. Payless Shoesource, Inc*., 2010 U.S. Dist. LEXIS 27666 (N.D. Cal. Mar. 12, 2010).

### B. The FCC Has Repeatedly Affirmed That "Predictive Dialers" Used by CPS Are ATDS Under the TCPA

The TCPA directed the FCC to prescribe regulations implementing the restrictions on the use of autodialers. 47 U.S.C. § 227(b)(2). Following Congress's directive, the FCC has expanded the definition of an ATDS. In 2003, the FCC issued an order finding that predictive dialers are indeed ATDS under the TCPA. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* CG Docket No. 02-278, 18 FCC Rcd 14014, 14093 (June 26,

3

2003) ("2003 Order"). In the 2003 Order, the FCC further clarified the nature of predictive dialers:

> The record demonstrates that a predictive dialer is equipment that dials numbers and, when certain computer software is attached, also assist telemarketers in predicting when a sales agent will be available to take calls. The hardware, when paired with certain software, has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers. As commenters point out, in most cases, telemarketers program the numbers to be called into the equipment, and the dialer calls them at a rate to ensure that when a consumer answers the phone, a sales person is available to take the call. The principal feature of predictive dialing software is a timing function, not number storage or generation.

*Id* at 14091. The FCC found further that "the basic function" of predictive dialers "had not changed" from earlier automated dialing systems, i.e., "the capacity to dial numbers without human intervention." *Id* at 14092. Finally, considering Congress's intent to eliminate unwanted automated calls, the FCC found that the exclusion of predictive dialers from the definition of an ATDS simply because it relied on a programmed set of numbers "would lead to an unintended result". *Id* ("We believe that the purpose of the [statutory] requirement that equipment have the 'capacity to store or produce telephone numbers to be called' is to ensure that the prohibition on autodialed calls could not be circumvented."). The 2003 Order made clear predictive dialers were subject to the same restrictions under the TCPA as older automated dialing systems[1].

In 2008, in response to a petition by debt collection trade association ACA International, the FCC again expressly reaffirmed that predictive dialers used for collections calls are ATDS:

> The Commission found that, based on the statutory definition of "automatic telephone dialing system," the TCPA's legislative history, and current industry practice and technology,

---

[1] In response to multiple requests for reconsideration, the FCC held again that the definition of an ATDS "includes 'predictive dialers' that dial numbers and, when certain computer software is attached, assist telemarketers in predicting when a sales agent will be available to take the next call." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* CG Docket No. 02-278, 19 FCC Rcd 19215, 19215 n.1 (August 25, 2004).

4

a predictive dialer falls within the meaning and definition of autodialer and the intent of Congress.

The Commission noted that the evolution of the teleservices industry had progressed to the point where dialing lists of numbers was far more cost effective, but that the basic function of such dialing equipment, had not changed—the capacity to dial numbers without human intervention. The Commission noted that it expected such automated dialing technology to continue to develop and that Congress had clearly anticipated that the FCC might need to consider changes in technology ...

Most importantly, the Commission said that, to find that calls to emergency numbers, health care facilities, and wireless numbers <u>are permissible when the dialing equipment is paired with predictive dialing software and a database of numbers</u>, <u>but prohibited when the equipment operates independently of such lists</u>, **would be inconsistent** with the avowed purpose of the TCPA and the intent of Congress in protecting consumers from such calls.

*In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991; Request of ACA International for Clarification and Declaratory Ruling*, CG Docket No. 02-278, 23 FCC Rcd 559, 565-566 (Dec. 28, 2007) released January 4th, 2008,("FCC 2008 Order") (Emphasis Added). *See Exhibit 1*. The FCC found that a preditive dialer is an ATDS when it is "equipment paired with predictive dialing software and a database of numbers." *Id*.

    **C.**    **The FCC Rulings are Final**

Under the Hobbs Act, the Court of Appeals has exclusive jurisdiction to determine the validity of all final orders of the FCC. 28 U.S.C § 2342(1) if they are appealed 90 days after they are final, which the 2003 and 2008 orders were not. The FCC's holdings with respect to predictive dialers are therefore final and controlling. *CE Design, Ltd. v. Prism Business Media, Inc.*, 606 F. 3d 443, 446 (7th Cir. 2010). In *CE Design*, the 7th Circuit specifically addressed the 2003 Order and held that neither the district court nor the Seventh Circuit had jurisdiction to review the 2003 Order under the Hobbs Act. *Id* at 450. This Court is therefore bound by the FCC's orders, which affirm that predictive dialers are ATDS regulated by the TCPA. *Id*.

It is therefore no surprise that other courts presented with the same issues as this case have followed the 2003 Order and its progeny by applying the TCPA to predictive dialers. *See e.g.*, *Satterfield*, 569 F. 3d at 951*; Vance* supra at *6 -7 ; *Hicks supra* at *10-12; *See also Joffe* supra. CPS has not cited a single case for the proposition that certain predictive dialers are not ATDS. In fact, none of the cases cited by CPS in its motion even addresses a predictive dialer.

CPS effectively asks this Court to overrule the FCC's orders on predictive dialers despite the prohibition against doing so. In any event, it is clear that the FCC considered *all* predictive dialers to be ATDS subject to the TCPA, regardless of the specific mechanisms or computer code involved[2]. *See* 2003 Order, 18 FCC Rcd at 14092 (focusing on the basic function of autodialers to "dial calls without human intervention" and Congress's purpose of "ensur[ing] that the prohibition on autodialed calls could not be circumvented"). CPS's argument that its autodialing system is not really a predictive dialing system is nothing but a thinly veiled attempt to circumvent the TCPA's requirements and render the FCCs rulings on predictive dialers meaningless. In fact, many of the arguments set forth by CPS in its motion were already considered by the FCC in it 2003 and 2008 orders *(see infra)* and ultimately rejected when the FCC issued its Orders[3]. CPS nevertheless

---

[2] Throughout its motion, CPS states that the FCC included only "*certain*" predictive dialers in the definition of an ATDS. This is false. *See 2003 Order*, 18 FCC Rcd 14093 ("Therefore, the Commission finds that a predictive dialer falls within the meaning and statutory definition of "automatic telephone dialing equipment" and the intent of Congress."). Further, CPS' expert admits that virtually all predictive dialers work the same way as the dialer CPS uses and he could not name a predictive dialer that worked differently. *(Plaintiff's Statement of Additional Facts* ("SAF") ¶2, 4

[3] CPS attached the comments from the collection industry that argued predictive dialers are not ATDS because they do not store or produce the telephone numbers to be called. *See e.g.*, *Comments of Mastercard International Incorporated*, Exhibit B to Declaration of Benjamin J. Stone in Support of CPS's Motion for Summary Judgment, Doc. # 26-1 at p. 20 (attempting to distinguish predictive dialers from ATDS because they "generally do not store or generate telephone numbers to be called

refurbishes the same arguments and apparently believes that the Court will not recognize them in this new context in an effort to end run the *Hobbs Act*. CPS' argument ignores the plain reading of the FCC Rulings and the facts of this case. It even appears that CPS' lead counsel does not agree with CPS' argument. He published an article that states:

> The FCC, which issues regulations interpreting the TCPA, has interpreted 'automatic telephone dialing system' broadly. The FCC has ruled that a predictive dialer - which, in relevant part, stores pre-programmed numbers <u>or receives them from a database</u> - is an automatic telephone dialing system.

*See Exhibit 2*. Even though its lawyer concluded the FCC definition of an ATDS includes dialers that receive numbers from a database, it argues the FCC orders only cover stand alone machines.

### III. CPS Used an ATDS to Call Plaintiffs And the Putative Class

CPS uses the Castel dialer in various "dialing campaigns" to its customers who are behind on their payments. *See CPS's Statement of Facts*, Doc. # 30 ("SMF") at ¶ 8. Before the Castel dialer

---

using a random or sequential number generator"); *Comments of the American Teleservices Association,* Exhibit C to Declaration of Benjamin J. Stone in Support of CPS's Motion for Summary Judgment, Doc # 26-2 at p. 10 (attempting to distinguish predictive dialers from ATDS because "they rely on telephone numbers from lists provided by the equipment operator"). The FCC could not have been clearer in its rejection of these arguments: "We believe that the purpose of the [statutory] requirement that equipment have the 'capacity to store or produce telephone numbers to be called' is to ensure that the prohibition on autodialed calls could not be circumvented." *2003 Order*, 18 FCC Rcd 14014 at 14092-93. Otherwise the result, unintended by Congress, would be to permit calls to wireless numbers "when the dialing equipment is paired with predictive dialing software and a database of numbers", but prohibit such calls "when the equipment operates independently of such lists and software packages." *Id* at 14092.

Similarly, the FCC already rejected the argument that predictive dialers are not ATDS because they do not dial numbers randomly or sequentially but rather from an established list of numbers. The inclusion of the phrase *"or from a database of numbers"* in its description of predictive dialers establishes that fact. *See also Comments of Household Financial Services, Inc.,* Exhibit A to Declaration of Benjamin J. Stone in Support of CPS's Motion for Summary Judgment, Doc # 26-1 at p. 8 (attempting to distinguish predictive dialers from ATDS because they "dial telephone numbers from an existing database" ).

begins to dial telephone numbers, a supervisor in CPS's collections department establishes criteria for the dialing campaign, e.g. "Illinois customers who owe $500 or more and are 21 to 30 days behind" (*See Plaintiffs' Statement of Additional Facts ("SAF")* at ¶18), and inputs that criteria into CPS's collection software. *SMF* at ¶ 11. In so doing, the supervisor effectively "tells the CPS system which telephone numbers to call". *Id*. Once the criteria are set by the supervisor, the CPS software runs a program that creates a list of accounts/telephone numbers meeting the criteria ("the logical view file") to be called in the dialing campaign. *Id* at ¶ 13. Those numbers are then called by the Castel Dialer. *Id* at ¶ 15; *SAF at ¶23*.

CPS can use the Castel Dialer multiple ways including "Managed Auto Dial" and "Predictive Dialing." *SAF* at ¶7. Castel's Managed Auto Dial and Predictive Dialing are basically the same except the Predictive Dialing can call multiple numbers at once to insure that collectors are not waiting for a customer to answer, e.g., it can dial ten telephone numbers even though only five collectors are available. *SAF* at ¶9. CPS can also use the Castel Dialer to run agentless campaigns where it can send pre-recorded messages without an agent being on the line. *SAF* at ¶14. CPS can set the calling parameters to sort the order or sequence of calls it makes. *SAF* at ¶21. For instance, CPS has the ability to have the Castel Dialer call every cell phone listed in the cell phone data field in CPS's database. SAF at ¶19.

CPS is able to generate reports for all calls made relating to an account including all calls made by the Castel Dialer. *SAF* at ¶25. CPS' telephone logs denote all calls made by the dialer as AD, which stands for Auto Dialer. *SAF* at ¶26. CPS admits that its telephone logs show that it used the Castel Dialer to call plaintiffs. *SAF* at ¶27.

8

According to CPS' expert[4], the Castel Dialer used by CPS operates the same as every other dialer currently used by the collection industry. *SAF* at ¶4. According to Mr. Cutler, companies buy dialers for their capacity and capabilities and are not concerned with the infrastructure. *SAF* at ¶1. Mr. Cutler testified that there is no difference in capacity between a dialer with software built into the dialer versus a dialer that has the software on a host system. *SAF* at ¶3. In fact, the Castel Dialer cannot function without being paired with the Castel software on CPS system. *SAF* at ¶5.

Mr. Cutler did testify that the Castel Dialer used by CPS "would be equipment paired with predictive dialing software and a database of numbers" after reading the 2008 Order. *SAF* at ¶10. He also testified that the Castel Dialer can perform an agentless campaign such that the dialer can be used without any human involvement. *SAF* at ¶14.

Plaintiff's expert, Mr. Synder, found that "CPS maintains and operates an ATDS which (I) has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator; and the capacity to dial such numbers as defined by the TCPA; (ii) has the capacity to dial lists of numbers without human intervention as defined by the FCC; and (iii) when paired with predictive dialing software dials such lists of numbers that are not calls to emergency numbers or health care facilities." *SAF* at ¶¶ 6, 13, 15. He continued, "it is also my expert opinion that CPS maintains and operates an ATDS which has the capacity to call cellular telephone numbers using an ATDS without the prior express consent of the called party." *Id* at ¶32. His opinion[5] is

---

[4] CPS' expert holds no degrees or certifications in any industry. He testified that he did not make any substantive changes to the affidavit prepared by defense counsel. *SAF* at ¶35.

[5] In addition to being recognized as an expert on dialers by the 9th Circuit, Mr. Snyder developed standards for the Telecommunications Industry Association (TIA). Most notably, he authored and oversaw the standardization of Interim Standard 93, providing interconnection technology between

9

based on the fact that CPS employs technology that uses an ATDS paired with predictive dialing software and used that equipment, as defined in the TCPA and accompanying FCC regulations, to communicate with cellular telephone subscribers." *Id* at ¶10.

Mr. Snyder agrees with Brian Cutler in his deposition that the Castel Dialer itself has a predictive dialing function. *SAF at ¶8*. He also agrees with Brian Cutler that the Castel Dialer, as implemented, is equipment paired with predictive dialing software and a database of numbers. SAF at ¶10. Furthermore, he agrees with Brian Cutler that typical automatic dialers work in tandem with a separate host computer system (such as the CPS Computer System) that maintains a database of numbers to be called by the automatic dialer. *SAF* at ¶2. Integrated together, the CPS Computer System along with the Castel Dialer comprise a predictive dialer, or in other words, an ATDS. *SAF* at ¶12. He disagrees with Mr. Cutler in his deposition that the Castel Dialer merely "reads" these numbers via a "pipe" from the CPS Computer System and does not store them. *SAF* at ¶24. The data flow diagram shown in Exhibit B of Corrected Declaration of Brian Cutler is oversimplified and does not depict the Castel Dialer obtaining the telephone numbers to dial. *Id*. The Castel Dialer is required to store each telephone number to be dialed, at least for a temporary period of time in memory, and at least in order to properly format the digits for the Integrated Services Digital Network ("ISDN") protocol format to dial the numbers for the PBX. *Id*.

---

wireline and wireless networks, which is now a fully accredited national standard of the American National Standards Institute. He is the author of the McGraw-Hill books "Mobile Telecommunications Networking with IS-41," and "Wireless Telecommunications Networking with ANSI-41, 2nd edition" published in 1997 and 2001, respectively. He has been granted several patents on telecommunications networking technology and currently have several additional published patents pending. He has consulted and been employed for many wireline and wireless telecommunications companies including McCaw Cellular, AirTouch, AT&T Wireless, Lucent, Nokia, Ericsson, Nextwave, MCI, Sprint and others.

**IV.     CPS's Dialer is an ATDS as Defined by the TCPA**

Once again, the TCPA defines ATDS as "equipment which has the capacity - (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C § 227(a)(1).Because plaintiff's expert, Mr. Synder (who is the same dialer expert recognized by the 9th Circuit in *Satterfield* supra), found that "CPS maintains and operates an ATDS which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator; and the capacity to dial such numbers as defined by the TCPA," SAF at 6, plaintiffs have satisfied the TCPA definition of an ATDS and do not need to prove they meet the expanded interpretation of an ATDS set forth by the FCC.

**V.     CPS's Dialer is a Predictive Dialer as Defined by the FCC**

As shown above, the FCC has not limited the definition of a "predictive dialer, but instead defined predictive dialers in the following ways: (A) in most cases they require an individual to "program the numbers to be called into the equipment" (*2003 Order,* 18 FCC Rcd at 14091); (B) as having the basic function of dialing those numbers "without human intervention" (*Id* at 14092); (C) as relying on computer software having the principal feature of 'predicting' the most opportune time to place the call (*Id* at 14022 n. 31; *Id* at 14091); and (D) as having "hardware [that], when paired with certain software, has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers." (*Id*). An ATDS would also be "equipment paired with predictive dialing software and a database of numbers." *2008 Order* at ¶14. CPS's dialing system, which uses the "Castel Dialer", falls squarely within any of these descriptions.

    **1.     CPS' Dialer Is Paired With Predictive Dialing Software**

Both parties' experts agree that Castel Dialer, as implemented by CPS, is equipment paired

11

with predictive dialing software and a database of numbers. *SAF* at ¶10. Because the 2008 Order at ¶14 held that a predictive dialer is an ATDS when it is "equipment paired with predictive dialing software and a database of numbers," the CPS dialer is an ATDS. The dialer used by CPS also meets the other definitions of ATDS as well as the definition set forth in the TCPA as shown above.

### 2. The Castel Dialer Dials a List of Numbers that are Programmed by CPS

Before the Castel dialer begins to dial telephone numbers, a supervisor in CPS's collections department establishes criteria for the dialing campaign, e.g."Illinois customers who owe $500 or more and are 21 to 30 days behind" *(SAF* at ¶18), and inputs that criteria into CPS's collection software. *See SMF* at ¶ 11. The above set of facts is entirely consistent with the FCC's description of predictive dialers. *See 2003 Order,* 18 FCC Rcd at 14091 ("As commenters point out, in most cases, telemarketers program the numbers to be called into the equipment"). The Castel dialer dials a list of numbers that are programmed into the system.

### 3. The Castel Dialer Dials Without Human Intervention

As discussed above, once the list of numbers to be called in the dialing campaign is created, the dialer begins calling[6] those numbers at a specified time. *SMF* at ¶ 15; *SAF at ¶23*. These calls are made automatically and without human intervention. *SMF at ¶¶15-16; SAF* at ¶¶14, 15, 20.

The Castel dialer thus meets the FCC's definition of predictive dialers as having the same basic function as all ATDS, i.e., "the capacity to dial numbers without human intervention". *2003 Order,* 18 FCC Rcd at 14092. CPS's argument that the Castel dialer "cannot dial telephone numbers automatically, but reads the telephone numbers" is factually incorrect as noted by plaintiff's expert,

---

[6] According to Plaintiff's expert, the dialer must store the numbers in memory in order to do so. *SAF* at ¶24. Even CPS' expert admits that it uses RAM (Random Access Memory) SAF at ¶34.

12

trivial at best, and does not distinguish it from other ATDS. CPS might as well argue that the Castel dialer cannot dial telephone numbers automatically because it must be manually plugged into a power source. The fact is that the *actual dialing of the numbers* is done by the Castel dialer without human intervention. *SMF* at ¶¶15-16; *SAF* at ¶¶14, 15, 20.

### 4. The Castel Dialer Is Paired with CPS's Predictive Collection Software

The Castel Dialer itself has predictive dialing capabilities. *SAF* at ¶8. In addition, CPS pairs the dialer with predictive dialing software. SAF at ¶¶10-11. While creating the dialing campaign, CPS's employee inputs "parameters for predictive dialing, such as how fast the calls can be made, how many calls to make at once, and how long the calls should be expected to last". *SMF* at ¶ 12. This programs CPS's collection software to "control the rate of the calls by the dialer, enabling the dialer to engage in predictive dialing". *Id*. As such, "the Castel dialer has the capacity to call numbers on a "predictive" basis, which assists in maximizing the efficiency of the campaign. Using complex algorithms, software on the CPS server can time the calls made by the dialer to help ensure that a CPS collector who has "signed on" to the campaign is available to take the call." *SAF* at ¶11.

This set of facts is entirely consistent with the FCC's definition of predictive dialers as "equipment that dials numbers and, *when certain computer software is attached*, also assist telemarketers in predicting when a sales agent will be available to take calls." *2003 Order*, 18 FCC Rcd at 14091(emphasis added). CPS argues, again in the most trivial sense, that its dialer is not a predictive dialer because the predictive dialing software is not "stored" on the dialer itself. The FCC has expressly rejected this argument. (to hold that calls "are permissible when the dialing equipment is paired with predictive dialing software and a database of numbers, but prohibited when the equipment operates independently of such lists, would be inconsistent with the avowed purpose of

13

the TCPA and the intent of Congress in protecting consumers from such calls.") 2008 Order at ¶14.

### 5. The CPS Dialer has the Capacity to Store or Produce Numbers and Dial them From a Database of Numbers

The FCC also described predictive dialers as having "hardware [that], when paired with certain software, has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers." *2003 Order*, 18 FCC Rcd 14014 at 14091. CPS's treatment of this description as the *sine qua non* of predictive dialers is unwarranted considering the FCC's multi-faceted discussion of predictive dialers in the 2003 Order. Even so, the Castel dialer falls squarely within this description of predictive dialers as well.

The Castel dialer itself is "hardware". *SMF* at ¶ 7 (describing the Castel dialers as "a piece of computer hardware called a dialer"). As shown above, this "hardware" is attached to or "paired with" certain software, i.e., CPS's Collection Software maintained on its computer network. *Id* at ¶ 15. This software, among other things, establishes the timing parameters for predictive dialing but also the list of telephone numbers to be called by the Castel dialer in the dialing campaign. *Id* at ¶¶ 12-13. This list of telephone numbers, the "logical view file", is maintained for the Castel dialer to access and "read" through its connection to the CPS Collection Software. *Id* at ¶ 15. Through this pairing with the software, CPS's dialing system thus "stores" the file of numbers to be called in the Logical View File and "produces" those numbers through the creation of the Logical View File. Furthermore, the Castel dialer itself stores the numbers to be dialed in its memory. *SAF* at ¶24.

The numbers in the Logical View File are listed and ultimately dialed by the dialer in a *sequence* based upon the campaign criteria, e.g., by balance or date of the loan origination. *SAF* at

¶22.[7] Finally, the Logical View File is nothing but "a database of numbers". CPS's dialing system, which is the Castel dialer itself paired with CPS's collection software, thus has the capacity to store or produce numbers and dial those numbers from a database of numbers. SAF at ¶¶10, 22-24.

In its motion, CPS repeatedly ignores the terms "*when paired with certain software*" and *"or from a database of numbers*", which are most relevant to this case. *See e.g*, Doc. 25 at pp. 9-10. By using the phrase *when paired with certain software or from a database,* the FCC acknowledged that predictive dialing systems do not carry out all of their functions in the dialing hardware itself. The FCC repeatedly refers to the necessary use of software in predictive dialing systems. *See 2003 Order*, 18 FCC Rcd 14014 at 14091. Moreover, CPS's own expert witness, Brian Cutler, testified at his deposition that he was not aware of the existence of a single dialing system that did not use separate software stored on the operator's computer system. *SAF* at ¶4. CPS ignores the phrase "*when paired with certain software*" because its entire motion is based on the trivial assertion that the Castel dialer hardware does not itself do all of the things mentioned by the FCC in its discussion of predictive dialers. CPS's position is betrayed by its own expert testifying the Castel dialer is useless without the software and he was not aware of any predictive dialer that actually meets the FCC's definition of a predictive dialer because none of them actually "store" numbers in the dialer itself. *SAF* at ¶36.

The Castel dialer used by CPS meets every definition of an ATDS in the TCPA and as prescribed by the FCC. This Court should, therefore, rule that the dialing system used by CPS is an ATDS under the TCPA .

---

[7] To the extent that the description "at random [or] sequential order" refers only to a *numerical* sequence (such as 555-555-5555, 555-555-5556, then 555-555-5557), the Castel dialer dials numbers "at random" because they are listed and dialed from the Logical View File by some other order, such as account balance or date.

## IV. CONCLUSION

CPS's Castel dialer paired with software on the CPS collections system is an automatic telephone dialing system as defined by the TCPA. In the alternative, there is at least a genuine dispute of fact whether CPS's autodialing system has the requisite capacity to be considered an automatic telephone dialing system when viewed in the light most favorable to Plaintiffs.

                                                         Respectfully submitted,
                                                         /s/ Timothy J. Sostrin

Keith J. Keogh
Timothy J. Sostrin
KEOGH LAW, LTD.
101 N. Wacker Dr., Suite 605
Chicago, IL 60606
312.726.1092
312.726.1093 (fax)
Keith@keoghlaw.com
Tsostrin@keoghlaw.com

## CERTIFICATE OF SERVICE

I, Timothy J. Sostrin, hereby certify that on June 3, 2011, I caused a copy of the foregoing to be served upon counsel of record for defendant through the District Court for the Northern District of Illinois electronic filing system.

                                                         /s/ Timothy J. Sostrin