IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROSLYN GRIFFITH and JERRET CAIN, <br><br> Plaintiffs, <br><br> v. <br><br> CONSUMER PORTFOLIO SERVICES, INC., <br><br> Defendant. | Case No.: 1:10-cv-02697 <br><br> JUDGE: JOHN F. GRADY |

**REPLY MEMORANDUM IN FURTHER SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**I. INTRODUCTION**

Defendant Consumer Portfolio Services, Inc. ("CPS") seeks summary judgment dismissing Plaintiffs' claim under the federal Telephone Consumer Protection Act ("TCPA") because CPS does not use an "automatic telephone dialing system" as defined by the TCPA and the Federal Communications Commission ("FCC").

The TCPA defines "automatic telephone dialing system" as dialing equipment with the capacity to store, produce, and dial numbers using a random or sequential number generator. 47 U.S.C. § 227(a)(1). The FCC held that a "predictive dialer" can be an automatic telephone dialing system if it "has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 188 FCC Rcd 14014, ¶ 131 (2003) ("2003 FCC Order"). The Castel dialer used by CPS is not an "automatic telephone dialing system" under either standard. It does not store or produce telephone numbers. Statement of Undisputed Facts in Support of Motion for Summary Judgment ("SUMF") ¶ 26. It reads numbers stored on the CPS computer network. *Id.* ¶ 15. It does not dial numbers randomly or sequentially. *Id.* ¶¶ 26, 27. It dials the numbers in order from lists created from criteria set by a CPS employee. *Id.* ¶ 10. To hold that the Castel dialer is an "automatic

1

telephone dialing system" based on these undisputed facts would expand the TCPA beyond the plain language of the statute and the FCC's interpretations of it, violating the fundamental rule that plain and unambiguous statutes must be enforced according to their terms.

In opposing the motion and seeking summary judgment themselves, Plaintiffs misconstrue the statutory definition of automatic telephone dialing system and misstate the evidence offered by CPS' witnesses regarding the capacities of the Castel dialer. Plaintiffs also rely heavily on the declaration of a purported expert, Randall Snyder. But Snyder's Declaration is inadmissible because it fails to show either that he has any experience with dialers or that his opinions are based on admissible evidence as required by Fed. R. Civ. P. 56. Plaintiffs therefore fail to raise a genuine issue of material fact or to establish that they are entitled to summary judgment. For all these reasons, the Court must grant CPS' summary judgment motion.

## II. ARGUMENT

### A. THE CASTEL DIALER DOES NOT FALL WITHIN THE PLAIN LANGUAGE OF THE TCPA

The Castel dialer is not an automatic telephone dialing system under the TCPA because it cannot store, produce, and dial numbers randomly or sequentially. *See, e.g.,* Statement of Undisputed Material Facts in Support of Motion for Summary Judgment ("SUMF") ¶ 26. Apart from Snyder's unfounded speculation, plaintiffs cite no contrary evidence regarding the Castel dialer's capabilities. Given the lack of facts or data supporting his opinions, Snyder's claims that the Castel dialer can store, produce, and dial numbers using a random or sequential number generator are inadmissible. *See* Defendant's Motion to Strike Declaration of Randall A. Snyder ("Motion to Strike").

Plaintiffs also argue that the Castel dialer stores telephone numbers because it "formats" them before dialing. Plaintiffs' Opposition to CPS' Motion for Summary Judgment ("Opposition") at 10, 14. But there is no foundation for this opinion by Snyder. As John Gallagher explains, the Castel dialer does not format telephone numbers before dialing them. Defendant's Response to Plaintiff's Statement of Additional Facts Pursuant to Local Rule 56.1

("Plaintiff's Additional Facts") ¶ 24. Any telephone number manipulation is limited to adding a "9" and a "1" if the call is long distance, and is handled by the CPS computer system. *Id.* Moreover, dialing the telephone numbers takes just a fraction of a second so the Castel dialer is not "storing" telephone numbers in any legitimate sense of the word. *Id.*[1]

Plaintiffs also contend that the requirement of sequential number generation is met because numbers are "dialed by the dialer in a *sequence* based upon campaign criteria …" Opposition at 14. But this is not a reasonable interpretation of the statutory words "sequential" and "generator." Statutory language should not be viewed in isolation, but in context, by reference to the words around it. *See, e.g., Shlahtichman v. 1-800 Contacts, Inc.*, 615 F.3d 794, 798 (7th Cir. 2010) ("we look to the ordinary or natural meaning of the term. . . . But we must also look to the statute as a whole in discerning a term's meaning rather than examining it in isolation"). In the TCPA, the term "sequential number generator" clearly refers to generating numbers in sequential order, *i.e.*, 111-1111, 111-1112. It does not extend to dialing numbers in order from a list. If Plaintiffs were correct, the words "generator" and "sequential" would be rendered meaningless since numbers would no longer have to be sequentially generated. As the Seventh Circuit has made clear, courts cannot interpret statutes in a way that renders words meaningless. *See, e.g., Witzke v. Femal*, 376 F.3d 744, 753 (7th Cir. 2004). Thus, the plain and unambiguous language in the TCPA requires that an automatic telephone dialing system be capable of generating numbers, in sequential order, and then dialing them. Since the Castel dialer lacks this capacity, it falls outside the TCPA.

**B.     THE CASTEL DIALER IS NOT AN AUTOMATIC TELEPHONE DIALING SYSTEM AS DEFINED BY THE FCC**

    **1.     The FCC Requires the Capacity to Store and Produce Numbers and Dial Them Randomly or Sequentially**

The FCC held in 2003 that a predictive dialer is an automatic telephone dialing system if it has "the capacity to store or produce numbers and dial those numbers at random, in sequential

---

[1] Plaintiffs also allege that the Castel dialer can engage in "agentless" campaigns. Opposition at 8. This assertion, which lacks any basis in the record, is untrue. The Castel dialer cannot engage in agentless campaigns. Response to Plaintiff's Additional Facts ¶ 14.

order of from a database of numbers." 2003 FCC Order ¶ 131. The FCC emphasized the capacity to store and produce numbers, commenting that the "statutory definition contemplates autodialing equipment that either stores or produces numbers" and that "the purpose of the requirement that equipment have the 'capacity to store or produce telephone numbers to be called' is to ensure that the prohibition on autodialed calls not be circumvented." *Id.* ¶¶ 132, 133. The FCC also confirmed the requirement that the dialer have the capacity to dial randomly or sequentially, stating at one point:

> The principal feature of predictive dialing software is a timing function, not number storage or generation. Household Financial Services states that *these machines are not conceptually different from dialing machines without the predictive computer program attached*.

*Id.* ¶ 131 (emphasis supplied). In other words, aside from being able to dial predictively, the dialer must have the capacity to be a random or sequential dialer to be an automatic telephone dialing system.[2]

As the FCC is undoubtedly aware, it lacks the power to define an automatic telephone dialing system any more broadly. The TCPA states the FCC may only "prescribe regulations to implement the requirements of this subsection." 47 U.S.C. § 227(b)(2). It cannot exceed that power. *American Library Ass'n v. FCC*, 406 F.3d 689, 698 (D.C. Cir. 2005) ("The FCC, like other federal agencies, 'literally has no power to act … unless and until Congress confers powers upon it.'") (quoting *Louisiana Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 374 (1986). In other words, because the TCPA defines automatic telephone dialing system to require random or sequential number generation and dialing, the FCC lacked the power to define automatic telephone dialing system any more broadly when it held that a predictive dialer could be an automatic telephone dialing system. And because the Castel dialer falls outside this definition, it is not an automatic telephone dialing system.

---

[2] Since issuing its decisions, the FCC has further confirmed the requirement of random or sequential number generation. *See* Unwanted Telephone Marketing Calls, available at http://www.fcc.gov/cgb/consumerfacts/tcpa.html (the FCC defined automatic telephone dialing system as "Autodialers [that] can produce, store, and dial telephone numbers *using a random or sequential number generator*") (emphasis supplied).

4

Furthermore, without requiring random or sequential dialing, personal landline and cell phones that can store numbers and "speed dial" them would be unwittingly ensnared within the TCPA. Congress never intended such a result, and the FCC confirmed that these devices are not automatic telephone dialing systems. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Report and Order, 7 FCC Rcd 8752, ¶ 47 (1992) ("1992 FCC Order") (the prohibitions in the TCPA "clearly do not apply to functions like 'speed dialing,' 'call forwarding,' or public telephone delayed message services … *because the numbers called are not generated in a random or sequential fashion*") (emphasis supplied).

Plaintiffs mistakenly rely on language from an FCC Order in 2008 in arguing that the FCC no longer requires that a predictive dialer have the capacity to store numbers and dial those numbers randomly or sequentially to be an automatic telephone dialing system. The 2008 Order was issued in response to a petition filed in 2006 by ACA International, a trade organization, which sought reconsideration of the 2003 FCC Order. *See* Exhibit A, Declaration of Benjamin J. Stone in Further Support of Defendant's Motion for Summary Judgment. The ACA argued that a predictive dialer could never be an automatic telephone dialing system because it could never generate random or sequential numbers. The ACA argued further that in the FCC's 2003 Order "the Commission adopted an excessively broad construction so that the capacity to store or produce a telephone number alone was sufficient to trigger the statute." *Id.* at 36. In 2008, the FCC affirmed the 2003 FCC Order and, in so doing, did not change the law, but merely upheld it. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991; Request of ACA Int'l for Clarification and Declaratory Ruling*, 23 FCC Rcd 559 ¶¶ 12-14 (2008) ("2008 FCC Order"). Thus, the FCC did not change the requirement that a predictive dialer be able to store or produce numbers and be able to dial them randomly or sequentially to be an automatic telephone dialing system.

### 2. The Castel Dialer Is Not an Automatic Telephone Dialing System as Defined by the FCC

The Castel dialer is not an automatic telephone dialing system as defined by the FCC because it cannot store or produce numbers, or dial them randomly or sequentially. SUMF ¶ 27. Instead, it reads telephone numbers placed in a temporary file on the CPS computer network. *Id.* ¶ 15. It also dials them in order, based on date of the loan. *Id.* ¶ 10.

Plaintiffs attempt to establish that the Castel dialer is hardware that "when paired with certain software, has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers." Opposition at 14 (quoting 2003 FCC Order ¶ 131). Particularly, Plaintiffs argue that the Castel dialer is "paired with" a database of telephone numbers on the CPS computer network. *Id.* This argument fails, however, because, in the sentence Plaintiffs quoted, the FCC was referring to predictive dialing software, not a database of numbers, as shown by the sentence that preceded the one quoted by Plaintiffs:

> A predictive dialer is equipment that dials numbers and, when <u>certain computer software</u> is attached, *also assists telemarketers in predicting when a sales agent will be available to take calls.*

2003 FCC Order ¶ 131 (underlining and italics added). The distinction between predictive dialing software and a database of numbers is significant. A dialer can be "paired with" predictive dialing software and be an automatic telephone dialing system, but the TCPA specifically requires that the dialer be able to store or produce telephone numbers. The FCC made this clear, saying: "The *hardware*, when paired with certain software, *has the capacity to store or produce numbers* …." 2003 FCC Order ¶ 131. The hardware to which the FCC is referring is the dialer and the FCC requires that it have the capacity to store or produce numbers. If the dialer cannot store or produce telephone numbers, it is not an automatic telephone dialing system.

### 3. Not All Predictive Dialers Are Automatic Telephone Dialing Systems

Plaintiffs assert that all predictive dialers work the same way and that they are all automatic telephone dialing systems. Opposition at 6. They make a similar legal argument later, contending that any dialer that is "paired with predictive dialing software is an ATDS".

6

Opposition at 13.³ These factual and legal arguments are both incorrect.

CPS's expert did not testify, as claimed by Plaintiffs, that all predictive dialers operate in the same manner. Instead, he admitted he did not know what other collection agencies used and then testified that he was aware of other types of dialers, ones that did not connect with a host computer network. Defendant's Response to Plaintiff's Additional Facts ¶ 2. Plaintiffs also cite Snyder's declaration but, again, as stated in the Motion to Strike, Snyder's opinion is inadmissible since he provides no basis for his assertion that all predictive dialers work the same way. To the contrary, at least one case confirms Mr. Cutler's testimony that there are other types of dialers in the marketplace, ones that can store or produce telephone numbers that would fall within the 2003 FCC Order. *Hicks v. Client Serv.,* No. 07-61822-CIV, 2009 WL 23635637, at *4-*5 (S.D. Fla. June 9, 2009) ("The Defendant's dialing device calls numbers that are manually entered into it by the Defendant's staff … once the numbers are entered *into the dialer*, the device will continue to dial numbers …") (emphasis supplied).

Again, the FCC made clear in 2003 that to be an automatic telephone dialing system the predictive dialer must be able to store numbers, among other things. Because the Castel dialer does not store numbers, it cannot be an automatic telephone dialing system, regardless of whether it connects to a computer network that stores numbers.⁴ In making their argument to the contrary, Plaintiffs do not address the holding in the 2003 FCC Order requiring number storage. Also, their reliance on case law to attempt to prove their point is misplaced. Two cases, *Satterfield* and *Joffe*, did not address predictive dialers, but text messages, and the issue for the courts there was whether the texts constituted "calling" or "dialing" under the TCPA. *See*, *e.g.*, *Joffe*, 121 P.3d at 332 *Satterfield*, 568 F.3d at 951-54. Indeed, the Ninth Circuit in *Satterfield*

---

³ They repeat this argument again when they say, "Integrated together, the CPS Computer System along with the Castel Dialer comprise a predictive dialer, or in other words, an ATDS." Opposition at 10.

⁴ Plaintiffs cite a short magazine article geared toward in-house lawyers written by counsel for CPS. Opposition at 7. Plaintiffs do not explain why this article is relevant; they do not – and cannot – argue that it is binding on CPS. Although CPS could respond to this, doing so seems unnecessary since the article is irrelevant and this Court is undoubtedly uninterested in what CPS's attorney might have written in marketing his law practice.

7

confirmed the position taken by CPS here that, to be an automatic telephone dialing system, the dialing equipment has to have the capacity to dial numbers randomly or sequentially. *Id*. at 951 ("When evaluating the issue of whether equipment is an ATDS, the statute's clear language mandates that the focus must be on whether the equipment has the capacity "to store or produce telephone numbers to be called, using a random or sequential number generator.").

*Hicks* involved a predictive dialer that stored telephone numbers, so it was materially different from the Castel dialer. Significantly, the court there confirmed that, to be an automatic telephone dialing system, the dialer must be able to store and produce numbers. *Id.* at *4 ("The FCC also stated that the 'purpose of the requirement that equipment have the 'capacity to store or produce telephone numbers to be called' is to ensure that the prohibition on autodialed calls not be circumvented'"). *Vance*, the only case from this district, was also a predictive dialer case. *Vance v. Bureau of Collection Recovery, LLC*, No. 10-06324, 2011 U.S. Dist. LEXIS 24908 (N.D. Ill. Mar. 11, 2011). There, the court denied the defendant's pre-answer motion to dismiss, concluding that evidence was required to determine whether the predictive dialer there was an automatic telephone dialing system.

> There may be a material difference between predictive dialers and the type of equipment the statute prohibits. But any such distinction is a matter to be explored through discovery. The specific capabilities of Defendant's equipment is a factual issue and not a proper basis for dismissal.

*Id*. at *6. Thus, *Vance* confirms that, whether a particular dialer is an automatic telephone dialing system depends on its capabilities, not merely on whether it can dial numbers on a predictive basis. Even if CPS' dialer could dial predictively, it is still not an automatic telephone dialing system because it cannot store numbers or dial them randomly or sequentially.

### 4. **Granting CPS Summary Judgment Is Consistent with the Purpose of the TCPA**

Plaintiffs contend that the TCPA was enacted to prevent unwanted autodialer calls and that, if this Court grants summary judgment dismissing this lawsuit, it would render "FCC's rulings on predictive dialers meaningless." Opposition at 6. But Plaintiffs misstate the purpose

8

behind the statute. The TCPA was enacted "in an effort to address a growing number of telephone marketing calls and certain telemarketing practices Congress found to be an invasion of consumer privacy." *Starkey v. Firstsource Advantage, LLC,* No. 07-CV-662A(Sr.), 2010 WL 2541756, at *3 (W.D.N.Y. Mar. 11, 2010); *Meadows v. Franklin Collection Serv., Inc.,* No. 7:09-CV-00605-LSC, 2010 U.S. Dist. LEXIS 72340, at *16 (N.D. Ala. June 25, 2010) (the TCPA was "enacted in an effort to address telephone marketing calls and practices"), *aff'd in relevant part*, 2011 U.S. App. LEXIS 2779 (11th Cir. Feb. 11, 2011). As the FCC has acknowledged repeatedly, debt collection calls are not telemarketing. 2008 FCC Order ¶ 11; 2003 FCC Order ¶ 113 n.358; 1992 FCC Order ¶ 36. As the FCC explained, in finding that collection calls using autodialers did not violate the TCPA:

> The use of auto dialers in debt collection increases the efficiency of the collector who no longer has to deal with unanswered calls, and is beneficial to the called party by making them aware of the company's inquiry. To the extent such practices comply with all other state or federal debt collection laws, it appears that this is a non-telemarketing use of auto dialers not intended to be prohibited by the TCPA.

*Id.* ¶ 15. Here, CPS was making collection, not marketing, calls. As such, a finding that the Castel dialer is not an "automatic telephone dialing system" is consistent with the scope and purpose of the TCPA.[5]

In addressing what they perceive will be the impact of a ruling in favor of CPS, Plaintiffs miss the point. "When the statute's language is plain, the sole function of the courts – at least where the disposition required by the text is not absurd – is to enforce it according to its terms." *Shlahtichman v. 1-800 Contacts, Inc.*, 615 F.3d 794, 798 (7th Cir. 2010). In *Shlahtichman*, the Seventh Circuit rejected an argument to extend the Fair and Accurate Credit Transactions Act to emailed, as well as "printed," receipts: "we may not ignore the unambiguous language of the statute in order to further Congress's expressed purpose in enacting the statute. *Id.* at 802; *see*

---

[5] Plaintiffs also misstate that the FCC orders are "final." Opposition at 5. Reconsideration can still be sought, regardless of the time that has passed. *See* 47 C.F.R. §§ 1.1 (proceedings before the FCC), 1.41 (informal requests for FCC action), 1.401(a) (petitions for rulemaking); *see also City of Peoria v. Gen. Elec. Cablevision Corp.*, 690 F.3d 116 (7th Cir. 1982) (explaining procedure for seeking reconsideration of earlier FCC ruling).

9

*also Morrison v. Nat'l Australia Bank Ltd.*, 130 S. Ct. 2869, 2886 (2010) ("It is our function to give the statute the effect its language suggests, however modest that may be; not to extend it to admirable purposes it might be used to achieve."). Here, the Castel dialer is not an automatic telephone dialing system as defined by the TCPA and the FCC. As such, CPS' summary judgment must be granted.

### III. CONCLUSION

CPS does not operate an "automatic telephone dialing system" as defined by the TCPA or the FCC. Because the TCPA claim rests on the allegation that CPS called Plaintiffs using an automatic telephone dialing system, this Court can dismiss this lawsuit as a matter of law.

DATED this 24th day of June, 2011.

    COZEN O'CONNOR

By:*/s/ Gregory D. Hopp*
    Gregory D. Hopp
    COZEN O'CONNOR
333 West Wacker Drive
Suite 1900
Chicago, Illinois 60606
Telephone: 312.382.3100
Toll Free Phone: 877.992.6036
Facsimile: 312.382.8910

AND

By:*/s/ Benjamin J. Stone*
    Benjamin J. Stone, *Pro Hac Vice*
    COZEN O'CONNOR
1201 Third Avenue
Suite 5200
Seattle, Washington 98101
Telephone: 206.340.1000
Toll Free Phone: 800.423.1950
Facsimile: 206.621.8783

Attorney for Defendant
Consumer Portfolio Services, Inc.

## CERTIFICATE OF SERVICE

       I hereby certify that a true and correct copy of the foregoing **REPLY MEMORANDUM IN FURTHER SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** was filed and served on all counsel of record via the Court's ECF System on this 24th day of June 2011.

                                            ___/s Gregory D. Hopp_____