**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS,
EASTERN DIVISION**

| | | |
|---|---|---|
| ROSLYN GRIFFITH and JERRET CAIN, | ) ) | |
| Plaintiffs, | ) | 1:10-cv-02697 |
| | ) | |
| v. | ) | Honorable Arlander Keys |
| | ) | |
| CONSUMER PORTFOLIO SERVICES, INC., | ) ) | |
| Defendant. | ) | JURY DEMAND |

**PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT**

Plaintiff[1] Jerret Cain ("Cain") and its counsel Keogh Law, Ltd., respectfully request that the Court grant this Motion for Preliminary Approval of Class Action Settlement with Defendant, Consumer Portfolio Services, Inc. ("CPS"). CPS does not oppose this motion. In support of this motion, plaintiff states as follows:

**NATURE OF THE CASE**

1. Jerret Cain brought a class action against Consumer Portfolio Services, Inc. on April 30, 2010 under the Telephone Consumer Protection Act, 47 U.S.C. §227, ("TCPA"). On August 2, 2010, plaintiffs filed their motion for class certification, which has been entered and continued by Judge Grady generally.

2. The TCPA and implementing Federal Communications Commission regulations (Count I) make it unlawful for any person within the United States . . . to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . ." 47

---

[1] This case was originally brought by Jerret Cain and Roslyn Griffith. Simultaneously with the filing of this motion, Ms. Griffith and CPS filed a joint stipulation to dismiss her claims.

U.S.C. § 227(b)(1)(A)(iii).

3.      After completing a substantial amount of discovery, which involved (1) contested discovery motions; (2) several sets of written discovery request to CPS; (3) depositions of current and former employees of CPS[2] including traveling to Irvine, California for some of the depositions; (4) deposing CPS' expert and (5) subpoenas to third parties: the district court denied CPS' motion for summary judgment and held as a matter of law that the dialer that CPS used to call plaintiffs was an automatic telephone dialing system ("ATDS") under the TCPA. Doc. 64.

4.      On September 28, 2011, this case was stayed pending mediation.

5.      CPS has denied and continues to deny each and all of the claims and contentions alleged in the action. CPS also has asserted and continues to assert many defenses thereto and has expressly denied and continues to deny any fault, wrongdoing or liability whatsoever arising out of any of the conduct alleged in the complaint. In addition, CPS contends that absent a settlement no class could be certified with respect to any of the alleged claims due to the predominance of individual issues among other reasons. Nevertheless, in order to avoid the burden and expense of continued litigation, CPS considers it desirable that the action and the claims alleged therein be settled.

**MEDIATION**

6.      On December 14, 2011, the parties had a settlement conference before Retired Judge Edward A. Bobrick of JAMS, which lasted over eight hours. It was attended by plaintiffs, Griffith and Cain, and CPS' in-house counsel and its Chief Financial Officer.

7.      As a result of the settlement conference, the parties reached the settlement that

---

[2] CPS also deposed both plaintiffs.

2

is reflected in the Settlement Agreement executed by the parties, attached hereto as *Appendix 1*.

8.     Counsel for plaintiff has reviewed and analyzed the legal and factual issues presented in this action, the information provided by defendant and third parties in discovery, the risks and expense involved in pursuing the litigation to conclusion, the likelihood of recovering damages in excess of those obtained through this settlement, the protracted nature of the litigation and the likelihood, costs and possible outcome of one or more procedural and substantive appeals. Based on the review and analysis, and after arms-length negotiations with counsel for defendant, plaintiff entered into the Settlement Agreement.

**TERMS OF THE SETTLEMENT**

9.     Pursuant to the Settlement Agreement, and subject to court approval, defendant has agreed to pay each class member who submits a valid and timely claim form a check for at least $182.00. In connection with the settlement, CPS will make available an amount up to $1,100,000.00 against which to make payments as follows: (1) to class members making claims; (2) to pay an award of attorneys' fees and costs to Class Counsel in an amount to be determined by the Court, but not to exceed $363,000.00

10.     Separate and apart from the $1,100,000.00 made available by CPS, CPS will pay Third Party Settlement Administration Costs and a class representative incentive award to Plaintiff in an amount to be determined by the Court, but not to exceed $5,000. In consideration for the Released Cain Claims, CPS will release and waive the balance of any debt owed by Cain to CPS and request that the credit reporting agencies to which CPS reports credit information delete the reference to Plaintiff's account with CPS from Plaintiff's credit report.

11.     In addition to the monetary relief, CPS has represented that it has implemented

3

additional personnel training regarding TCPA issues and has indicated that it intends to continue with such training.

12.     Plaintiff and counsel for plaintiff and the proposed class believe that the settlement of this action on the terms and conditions set forth in the Settlement Agreement is fair, reasonable and adequate, and would be in the best interests of the putative class members.

## SETTLEMENT CLASS

13.     Solely for the purpose of settlement in accordance with the Settlement Agreement, and pursuant to Fed. R. Civ. P. 23(a) and (b)(3) of the Federal Rules of Civil Procedure, the parties request that this Court provisionally approves the following settlement class ("Settlement Class"):

> persons who were customers of CPS where CPS made a telephone call to a cellular phone number with an Illinois area code using its predictive dialer mechanism after April 30, 2006 but before June 20, 2009 in connection with that person's account and express prior consent to call that cellular phone number is not shown in CPS's records by either (a) a notation in the field utilized by CPS to track express prior consent, or (b) the customer providing that cellular phone number in association with the origination of that customer's account. Persons who have previously released CPS from the claims asserted on behalf of the Settlement Class by the Class Representative in this Action or who have been discharged in a bankruptcy proceeding subsequent to the accrual of any claim they may have possessed which is asserted in this Action by the Class Representative on behalf of the Settlement Class are excluded from the Settlement Class.

### A.      Rule 23(a)(1) - The Settlement Class Is So Numerous That Joinder Of All Members Is Impracticable.

14.     The Settlement Class numbers 4,035 members.

15.     The United States Court of Appeals for the Seventh Circuit has recognized that as few as 40 class members are sufficient to satisfy the "numerosity" requirement of Rule 23(a)(1). *Swanson v. American Consumer Industries, Inc.*, 415 F. 2d 1326, 1333 (7th Cir. 1969); *see also, Newberg on Class Actions*, 3rd Ed. Sec. 3.05, pp. 3-25 ("The difficulty in joining as few

4

as 40 class members should raise a presumption that joinder is impracticable, and the plaintiff whose

class is that large or larger should meet the test of Rule 23(a)(1) on that fact alone."). The number

of class members in this case plainly satisfies the numerosity requirement of Rule 23(a)(1).

**B.      Rule 23(a)(2) - The Claims Of The Settlement Class
          Arise From Common Questions Of Law And Fact.**

16.      The "commonality" requirement of Rule 23(a)(2) is usually satisfied where

the class members' claims arise from a common nucleus of operative fact. *Rosario v. Livaditis*, 963

F. 2d 1013 (7th Cir. 1992). "Absolute commonality" is not required; commonality is satisfied if

plaintiffs can demonstrate that a "common nucleus of operative fact" exists among the proposed

class members. *Parker v. Risk Mgmt. Alternatives, Inc.*, 206 F.R.D. 211, 213 (N.D. Ill. 2002).The

commonality standard is "quite low." *Hernandez v. Midland Credit Mgmt., Inc.*, 236 F.R.D. 406, 411

(N.D. Ill. 2006). A plaintiff may ordinarily satisfy the commonality requirement by showing that

there is "at least one question of law or fact common to the class." *Arenson v. Whitehall

Convalescent and Nursing Home, Inc.*, 164 F.R.D. 659, 663 (N.D. Ill. 1996). Class certification will

not be defeated solely because there are some factual variations among the grievances of the class

members. *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir.1998); *Patterson v. General Motors Corp*.,

631 F.2d 476, 481 (7th Cir.1980).

17.      There are questions of law and fact common to the class that predominate over

any questions affecting only individual class members. The predominant common question of law

is whether defendant had consent to call the class members.

18.      Numerous courts have certified class actions under the TCPA. *Hinman v.

M and M Rental Center* Inc., 545 F. Supp. 2d 802 (N.D. Ill. 2008); *Brill v. Countrywide Home

Loans, Inc.,* 05 C 2713 (N.D. Ill. June 28, 2006); *Lampkin v. GGH, Inc.*, 146 P.3d 847 (Okla. Ct.

5

App. Oct. 31, 2006); *Transportation Institute v. Promo Dart, Inc.*, No. 06-2-03460-1 (King Co. Sup. Ct. Wash., Nov. 14, 2006); *Kavu, Inc. v. Omnipak Corporation*, 2007 U.S. Dist. LEXIS 5207, at *22-23 (W.D. Wash. Jan. 23, 2007); *Gene & Gene, LLC v. Biopay, LLC*, 2006 U.S. Dist. LEXIS 95082 (M.D. La. Dec. 20, 2006); *Rawson v. C.P. Partners d/b/a Comfort Inn-O'Hare*, 03 CH 15165 (Cook Co. Cir. Ct.); *Telecommunications Design Network v. McLeodUSA, Inc.*, 03 CH 8477 (Cook Co. Cir. Ct.); *CE Design v. The Trade Show Network Marketing Group, Inc.*, No. 03 CH K 964 (Cir. Ct. Kane Co., Dec. 2, 2004); *Travel 100 Group, Inc. v. Empire Cooler Service, Inc.*, 03 CH14510 (Cook Co. Cir. Ct.); *Bogot v. Olympic Funding Chicago*, No. 03 CH 11887 (Cook Co. Cir. Ct.);

    **C.**    **Rule 23(a)(3) - Named Plaintiff's Claims are Typical Of the Claims Of The Settlement Class.**

        19.    The "typicality" requirement of Rule 23(a)(3) is satisfied for many of the same reasons that the "commonality" requirement of Rule 23(a)(3) is met. *De La Fuente v. Stokley-Van Camp, Inc.*, 713 F. 2d 225, 232 (7th Cir. 1993)("A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory"); *Parker v. Risk Management Alternatives, Inc.*, 206 F.R.D. 211, 213 (N.D. Ill. 2002); *see also*, Fed.R.Civ.P. 23(a)(3).

        20.    Commonality and typicality are often treated together because the analyses of each are often interrelated. *See, e.g., Parker*, 206 F.R.D. at 213; *see also*, *Kremnitzer v. Cabrera & Rephen, P.C.*, 202 F.R.D. 239, 241 (N.D. Il. 2001) ("Typicality, the third requirement, is closely related to the question of commonality."). "Typicality is established when there is a 'sufficient relationship . . . between the injury to the named plaintiff and the conduct affecting the class,' and the claims of the named plaintiff and those of the class 'are based on the same legal theory.'" Newberg, §3.13.

21.     For virtually the identical reasons discussed in the preceding section, this element is also met. In this case, plaintiff was called on his cellular telephone for a number he did not provide to CPS.  His claims arose from the same question of law as those of the Class Members: Whether the telephone call he received is permissible under the TCPA.   Rule 23(a)(3) is plainly satisfied in this case.

**D.     Rule 23(a)(4) - Plaintiff and Class Counsel Will Fairly And Adequately Protect The Interests Of The Settlement Class.**

22.     The determination that the "representative parties will fairly and adequately protect the interests of the class" as required by Rule 23(a)(4) involve two considerations:  (1) whether the Plaintiff's attorneys are properly qualified and experienced to conduct the litigation; and (2) whether the Plaintiff has any interests antagonistic to the class.  *General Tel. Co. v. Falcon*, 102 S.Ct. 2364, 2370, n.13 (1982); *Retired Chicago Policy Ass'n v. City of Chicago*, 7 F.3d 584, 598 (7th Cir. 1993).

23.     As set forth in the Declaration of Keith J. Keogh (*Appendix 2*), Plaintiff's counsel is experienced in TCPA class action litigation.  In addition, Plaintiff has no interests in conflict with the Class.  Therefore, the named Plaintiff and his counsel satisfy the adequacy of representation requirement of Rule 23(a)(4).

**E.     The Settlement Class is Appropriate Pursuant to Rule 23(b)(3).**

24.     Class certification is appropriate under Rule 23(b)(3) where:  (1) common questions of law or fact predominate over individual questions and where (2) a class action represents a superior method for the fair and efficient adjudication of the controversy.  Because the claims arise from a standard practice, common questions predominate.

**THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT**

25.     Under Fed. R. Civ. P. 23(e)(1)(C), a court may approve a class action settlement if it is "fair, adequate, and reasonable, and not a product of collusion."There is usually an initial presumption of fairness when a proposed class settlement "is the product of arm's length negotiations, sufficient discovery has been taken to allow the parties and the court to act intelligently, and counsel involved are competent and experienced."H. Newberg, A. Conte, Newberg on Class Actions §11.41 (4th ed. 2002); *Goldsmith v. Technology Solutions Co*., No. 92 C 4374, 1995 WL 17009594, at *3 (N.D. Ill. Oct. 10, 1995); *Boggess v. Hogan*, 410 F. Supp. 433, 438 (N.D. Ill. 1975).

26.     As the Seventh Circuit recognizes, courts generally favor settlements of class actions:

> It is axiomatic that the federal courts look with great favor upon the voluntary resolution of litigation through settlement. In the class action context in particular, '"there is an overriding public interest in favor of settlement."' Settlement of the complex disputes often involved in class actions minimizes the litigation expense of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources.

*Armstrong v. Board of School Directors of the City of Milwaukee*, 616 F.2d 305, 312-13 (7th Cir.1980)(citations and quotations omitted), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998).

27.     District court review of a class action settlement proposal is a two-step process. At the preliminary approval stage, the question for this Court is whether the settlement falls within the "range of possible approval," and is sufficiently fair, reasonable and adequate to warrant dissemination of notice apprising Class Members of the proposed settlement and to establish procedures for a final settlement hearing under Rule 23(e). Newburg, *supra*, at §11.41. If the district court preliminarily approves a class action settlement, it then proceeds to the second step in the review process, the fairness hearing. Manual for Complex Litigation (Fourth) §21.633 (2004).

28.     In assessing the fairness, reasonableness and adequacy of a settlement, courts consider the following factors: (1) the strength of the case for plaintiffs on the merits, balanced against the amount offered in settlement; (2) the defendants' ability to pay; (3) the complexity, length and expense of trial; (4) the presence of collusion in reaching a settlement and (5) the stage of the proceedings and the amount of discovery completed. *Armstrong*, 616 F.2d at 314, (citations omitted); *Synfuel Techs., Inc.,* 463 F.3d at 653; *In re General Motors Corp. Engine Interchange Litig.,* 594 F.2d 1106, 1132 (7th Cir.1979) (citations omitted); *Isby v. Bayh,* 75 F.3d 1191, 1199 (7th Cir.1996). Of these considerations, the first is most important. *Synfuel Techs., Inc.,* 463 F.3d at 653.

**All Of The Factors Weigh In Favor Of Preliminary Approval**

**a.  The $182 Per Claim Form and Remedial Measures Implemented to Obtain Consent to Call Cellular Telephones Provide Significant Benefits To The Settlement Class.**

29.     In a TCPA case, each class member would be entitled to $500 per call and up to $1,500 if they can prove a willful violation of the Act.

30.     While plaintiff submits that he has a strong claim, plaintiff recognizes that CPS has defenses to the claims including the issue of consent to the class and the records needed to support such. Thus, each claimant in this settlement would receive at least $182.00.  *Goldsmith,* at *5 (approving settlement with a monetary fund representing a portion of the damages that could reasonably have been proven for the class).  In addition to this monetary consideration, CPS has implemented procedures to only call cellular telephone numbers with consent and will continue to engage in personnel training relating to the TCPA.

31.     CPS is a sub-prime auto finance company.  Like many finance companies, CPS has had a difficult time in this economy.  According to its Form 10-K for 2010, it had a net loss of $26,091,000.00 in 2008, a loss of $57,207,000.00 in 2009 and a loss of $33,826,000.00 in 2010.

According to its 3rd Quarter (10-Q) results it lost $14,695,000.00 for the first nine months in 2011. These conditions greatly impacted the amount available for settlement. Along these lines, plaintiff originally sought to certify a national class, but limited the class to only persons with Illinois area codes in order to provide the greatest benefit per class member.

**The Settlement Resulted From Extensive Arms-Length
Negotiations And Is Not The Product Of Collusion**

32. As a leading treatise on class action jurisprudence explains, "…decisions indicate that the courts respect the integrity of counsel and presume the absence of fraud or collusion in negotiating the settlement, unless evidence to the contrary is offered." Newberg, §11.51. *See also*, Section IV(1)(A), *supra* (there is an initial presumption of fairness when a settlement has been negotiated in arms-length by experienced counsel). The requirement that a settlement be fair is designed to protect against collusion among the parties. *Mars Steel Corp. v. Continental Illinois Nat. Bank and Trust Co. of Chicago*, 834 F. 2d 677, 684, 9 Fed. R. Serv. 3d (LCP) 909 (7th Cir. 1987) (approved settlement upon finding of no "hanky-panky" in negotiations). There usually is an initial presumption that a proposed settlement is fair and reasonable when it was the result of arm's-length negotiations. Newberg, §11.42.

33. Settlement was reached after discovery was almost complete, which consisted of hotly contested discovery motions, expert discovery, after plaintiff prevailed on summary judgment as to the issue of whether CPS used an auto-dialing system as defined by the TCPA, and through an in-person settlement conference conducted by the Honorable Edward A. Bobrick (Ret.) of JAMS.

34. The significant economic benefit to the Settlement Class, coupled with the remedial measures and personnel training, demonstrate that the settlement is more than fair,

reasonable and adequate.

**The Proposed Notice To Class Members Is Adequate**

35.     Under Federal Rule of Civil Procedure 23(c)(2), class members are entitled to notice of any proposed settlement and an opportunity to object or opt out before it is finally approved by the Court. Manual for Complex Litig. (Fourth) § 21.31 (2004). Notice is adequate if it is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174 (1974), *quoting, Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950).

36.     The Notice the parties propose here is clear and straightforward, providing putative class members with enough information to evaluate whether to participate in the Settlement, as well as directions on how to seek further information. The Notice contains all of the information required by Rule 23, such as the nature of the action; the class definition; summary of the class claims and defenses; the amount paid for a claim; the potential class representative fee and attorneys' fees and costs; ability to enter an appearance; exclusion rights; objection rights and binding effect of a class judgment on members under Rule 23.

37.     Notice will be provided by mail.  No later than twenty one (21) days after the entry of the Preliminary Approval Order, the Claims Administrator shall mail by first class mail the Class Notice to persons in the Settlement Class

38.     The Claims Administrator will perform various tasks relating to implementation of the settlement, including, without limitation:  (1) mailing or arranging for the mailing of the Class Notice and Claim Form as set forth in this Stipulation, including any National

Change of Address or other address searches or remailing; (2) establishing and maintaining a toll-free number for persons in the Settlement Class to contact the Claims Administrator; (3) receiving and maintaining on behalf of the Court any correspondence regarding requests for exclusion, intervention and objections to the settlement; (4) responding to inquiries from potential member of the Settlement Class or, as appropriate, forwarding any such inquiries to Class Counsel for response; (5) receiving and processing Claim Forms which shall include contacting any Claimant to request that missing information in the claim form provided or otherwise allow Claimant to correct errors in the claim form; (6) mailing payments to Authorized Claimants pursuant to the Stipulation and (7) providing Class Counsel with a list of all Settlement Class members who were sent notice and cooperate with Class Counsel by providing information requested by Class Counsel and copying Class Counsel on all communications with CPS Counsel.

39.     The notice scheme the parties propose is consistent with the due process requirements incorporated in Rule 23(c)(2)(B). Rule 23's advisory committee note states that the "mandatory notice pursuant to subdivision (c)(2) . . . is designed to fulfill requirements of due process to which the class action procedure is of course subject." Fed. R. Civ. P. 23(d)(2) advisory committee's note. (*citing*, *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950) (additional citations omitted).

40.     Accordingly, plaintiff respectfully submits, the Settlement Agreement and the settlement are sufficient to warrant notice thereof, as set forth below, and a full hearing on the settlement.

41.     The parties have agreed to the form of the draft preliminarily approval order attached to the Settlement Agreement as *Exhibit D* and again hereto as *Appendix 3*, which provides:

1) setting a date for a final approval hearing ("Court Approval Hearing");

2) approving sending the proposed Class Notice in the form that is attached to the Settlement Agreement as *Exhibit B*;

3) setting deadlines for mailing of the Class Notice, the filing of objections, the submission of requests for exclusion from the Settlement Class, and the filing of papers in connection with the Court Approval Hearing;

4) conditionally designating plaintiff as the representative of the Settlement Class and Keogh Law, Ltd. and Keith J. Keogh as counsel for the Settlement Class.

WHEREFORE, plaintiff respectfully requests that this Court enter an order in the form of *Appendix 3*.

Respectfully submitted;

/s/Keith J. Keogh

Keith J. Keogh
Craig Shapiro
Timothy Sostrin
KEOGH LAW, LTD.
101 W. Wacker Dr., Suite 605
Chicago, IL 60606
(312) 726-1092/(312) 726-1093 (fax)
Keith@Keoghlaw.com

13